IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOREST LABORATORIES, LLC, FOREST LABORATORIES HOLDINGS, LTD., ALLERGAN USA, INC., and IRONWOOD PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| TEVA PHARMACEUTICALS USA, INC., MYLAN PHARMACEUTICALS INC., SANDOZ, INC., AUROBINDO PHARMA LTD., and AUROBINDO PHARMA USA, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Forest Laboratories, LLC, Forest Laboratories Holdings, Ltd., Allergan USA, Inc., and Ironwood Pharmaceuticals, Inc. (collectively, "Plaintiffs"), for their Complaint against Defendants Teva Pharmaceuticals USA, Inc., Mylan Pharmaceuticals Inc., Sandoz Inc., Aurobindo Pharma Ltd., and Aurobindo Pharma USA, Inc. (collectively, "Defendants"), hereby allege as follows.

## PARTIES

1.      Plaintiff Forest Laboratories, LLC (successor-in-interest to Forest Laboratories, Inc.) is a Delaware limited liability company having a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054.

2.      Plaintiff Forest Laboratories Holdings, Ltd. is an Irish corporation having a principal place of business at Cumberland House, 1 Victoria Street, Hamilton HM11, Bermuda.

3.      Plaintiff Allergan USA, Inc. is a Delaware corporation having a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054

(referred to herein, together with Forest Laboratories, LLC and Forest Laboratories Holdings, Ltd., as "Forest").

4.      Plaintiff Ironwood Pharmaceuticals, Inc. ("Ironwood") is a Delaware corporation having a principal place of business at 301 Binney Street, Cambridge, Massachusetts 02142.

5.      Upon information and belief, Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a Delaware corporation having a principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454.  Upon information and belief, Defendant Teva manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

6.      Upon information and belief, Defendant Mylan Pharmaceuticals Inc. ("Mylan") is a West Virginia corporation having a principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505.   Upon information and belief, Defendant Mylan manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

7.      Upon information and belief, Defendant Sandoz Inc. ("Sandoz") is a Colorado corporation having a principal place of business at 100 College Road West, Princeton, New Jersey 08540.  Upon information and belief, Defendant Sandoz manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

8.      Upon information and belief, Defendant Aurobindo Pharma Ltd. is an Indian corporation having a principal place of business at Plot No. 2, Maitri Vihar, Ameerpet, Hyderabad – 500 038, Andhra Pradesh, India.  Upon information and belief, Defendant Aurobindo Pharma Ltd. manufactures and/or distributes numerous generic drugs for sale and use

throughout the United States, including in this judicial district, and including through its subsidiary and agent Aurobindo Pharma USA, Inc.

9. Upon information and belief, Defendant Aurobindo Pharma USA, Inc. is a Delaware corporation having a principal place of business at 6 Wheeling Road, Dayton, New Jersey 08810. Upon information and belief, Defendant Aurobindo Pharma USA, Inc. (referred to herein, together with Aurobindo Pharma Ltd., as "Aurobindo") is a wholly owned subsidiary of Aurobindo Pharma Ltd. Upon information and belief, Defendant Aurobindo Pharma USA, Inc. manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district, and including as a subsidiary and agent of Aurobindo Pharma Ltd.

## NATURE OF THE ACTION

10. This is a civil action for the infringement of one or more of the following patents by each of the Defendants: United States Patent Nos. 7,304,036 ("the '036 patent"), 7,371,727 ("the '727 patent"), 7,704,947 ("the '947 patent"), 7,745,409 ("the '409 patent"), 8,080,526 ("the '526 patent"), 8,110,553 ("the '553 patent"), 8,748,573 ("the '573 patent"), 8,802,628 ("the '628 patent"), and 8,933,030 ("the '030 patent"). This action is based upon the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and arises from Defendants' filing of Abbreviated New Drug Applications ("ANDAs") with the U.S. Food and Drug Administration ("FDA") seeking to commercialize generic versions of Plaintiffs' Linzess[®] brand linaclotide capsules throughout the United States, including this judicial district, before the expiration of Plaintiffs' applicable patents.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over each of the Defendants by virtue of the fact that, *inter alia*, each Defendant has committed, or aided, abetted, induced, contributed to, and/or participated in the commission of, a tortious act of patent infringement that has led to foreseeable harm and injury to Plaintiffs in Delaware.  Each of the Defendants has participated in the preparation and/or filing of an ANDA seeking approval to market and sell a generic version of Plaintiffs' branded product, Linzess®, and has distribution channels and plans to market and sell its generic product throughout the United States, including in this judicial district, before Plaintiffs' applicable patents expire.  This Court has personal jurisdiction over each of the Defendants for the additional reasons set forth below and for other reasons that will be presented to the Court if such personal jurisdiction is challenged.

13.     This Court has personal jurisdiction over Defendant Teva Pharmaceuticals USA, Inc. by virtue of, *inter alia*, the fact that Teva Pharmaceuticals USA, Inc. is a Delaware corporation.

14.     This Court has personal jurisdiction over Defendant Mylan Pharmaceuticals Inc. by virtue of, *inter alia*:  (1) its presence in Delaware; (2) its consent to being sued in Delaware, including its registration to do business in Delaware and appointment of a registered agent for the receipt of service of process in Delaware; and (3) its systematic and continuous contacts with Delaware.  Upon information and belief, Mylan Pharmaceuticals Inc. is amenable to litigating in this forum based on Mylan Pharmaceuticals Inc.'s conduct in multiple prior litigations in this District.  For example, Mylan Pharmaceuticals Inc. did not contest personal jurisdiction in Civil

4

Action No. 12-257 (D.I. 7), Civil Action No. 12-523 (D.I. 10), Civil Action No. 12-1065 (D.I. 7), Civil Action No. 13-1214 (D.I. 11), Civil Action No. 13-1605 (D.I. 10), or Civil Action No. 13-1781 (D.I. 10).

15.     This Court has personal jurisdiction over Defendant Sandoz Inc. by virtue of, *inter alia*, its consent to being sued in Delaware.

16.     This Court has personal jurisdiction over Defendant Aurobindo Pharma Ltd. by virtue of, *inter alia*:  (1) its presence in Delaware, including through its subsidiary and agent Defendant Aurobindo Pharma USA, Inc.; and (2) its systematic and continuous contacts with Delaware, including through its subsidiary and agent Defendant Aurobindo Pharma USA, Inc. Upon information and belief, Aurobindo Pharma Ltd. is amenable to litigating in this forum based on Aurobindo Pharma Ltd.'s conduct in multiple prior litigations in this District.  For example, Aurobindo Pharma Ltd. did not contest jurisdiction in Civil Action No. 14-664 (D.I. 12), Civil Action No. 14-872 (D.I. 16), Civil Action No. 14-909 (D.I. 10), Civil Action No. 14-1203 (D.I. 9), Civil Action No. 14-1469 (D.I. 8), Civil Action No. 15-902 (D.I. 59), Civil Action No. 15-1032 (D.I. 8), or Civil Action No. 16-451 (D.I. 8).

17.     This Court has personal jurisdiction over Defendant Aurobindo Pharma USA, Inc. by virtue of, *inter alia*, the fact that Aurobindo Pharma USA, Inc. is a Delaware corporation.

18.     Venue is proper in this judicial district as to all Defendants pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS

19.     On December 4, 2007, the '036 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO").   Ironwood is the sole owner of the '036 patent.  Forest

5

is the exclusive licensee of the '036 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '036 patent is attached hereto as Exhibit A.

20. On May 13, 2008, the '727 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. The USPTO issued a certificate of correction for the '727 patent on August 5, 2008. The USPTO issued a second certificate of correction for the '727 patent on December 28, 2010. Ironwood is the sole owner of the '727 patent. Forest is the exclusive licensee of the '727 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '727 patent, including its certificates of correction, is attached hereto as Exhibit B.

21. On April 27, 2010, the '947 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. The USPTO issued an *inter partes* reexamination certificate for the '947 patent on April 3, 2014. Ironwood is the sole owner of the '947 patent. Forest is the exclusive licensee of the '947 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '947 patent, including its reexamination certificate, is attached hereto as Exhibit C.

22. On June 29, 2010, the '409 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. Ironwood is the sole owner of the '409 patent. Forest is the exclusive licensee of the '409 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '409 patent is attached hereto as Exhibit D.

23.     On December 20, 2011, the '526 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. Ironwood is the sole owner of the '526 patent. Forest is the exclusive licensee of the '526 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '526 patent is attached hereto as Exhibit E.

24.     On February 7, 2012, the '553 patent, titled "Methods And Compositions For The Treatment Of Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. Ironwood is the sole owner of the '553 patent. Forest is the exclusive licensee of the '553 patent with respect to commercializing pharmaceutical products containing linaclotide in the United States. A copy of the '553 patent is attached hereto as Exhibit F.

25.     On June 10, 2014, the '573 patent, titled "Formulations Comprising Linaclotide," was duly and lawfully issued by the USPTO. The USPTO issued a certificate of correction for the '573 patent on August 30, 2016. Forest and Ironwood are the sole owners of the '573 patent. A copy of the '573 patent, including its certificate of correction, is attached hereto as Exhibit G.

26.     On August 12, 2014, the '628 patent, titled "Stable Solid Formulation Of A GC-C Receptor Agonist Polypeptide Suitable For Oral Administration," was duly and lawfully issued by the USPTO. Forest and Ironwood are the sole owners of the '628 patent. A copy of the '628 patent is attached hereto as Exhibit H.

27.     On January 13, 2015, the '030 patent, titled "Treatments For Gastrointestinal Disorders," was duly and lawfully issued by the USPTO. The USPTO issued a certificate of correction for the '030 patent on August 4, 2015. Ironwood is the sole owner of the '030 patent. Forest is the exclusive licensee of the '030 patent with respect to commercializing

7

pharmaceutical products containing linaclotide in the United States.  A copy of the '030 patent, including its certificate of correction, is attached hereto as Exhibit I.

28.    Forest Laboratories, LLC holds New Drug Application ("NDA") 202-811 for Linzess® brand linaclotide capsules.  Linzess® is approved for the treatment of irritable bowel syndrome with constipation ("IBS-C") and chronic idiopathic constipation ("CIC").  The '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent are all listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") for Linzess®.

29.    Allergan USA, Inc. is the exclusive distributor of Linzess® in the United States.

## ACTS GIVING RISE TO THIS ACTION

### Count I – Patent Infringement by Teva

30.    Upon information and belief, on or before October 21, 2016, Teva submitted ANDA No. 209568 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  ANDA No. 209568 seeks FDA approval for the commercial manufacture, use, and sale of generic capsule products containing 145 μg and 290 μg of linaclotide as the active ingredient ("the Teva Generic Products").  ANDA No. 209568 specifically seeks FDA approval to market the Teva Generic Products prior to the expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

31.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, ANDA No. 209568 alleges that the claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the

8

Teva Generic Products. None of the Plaintiffs received written notification of ANDA No. 209568 and its § 505(j)(2)(A)(vii)(IV) allegations any earlier than October 24, 2016.

32. Teva's submission of ANDA No. 209568 to the FDA, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of one or more of Claims 1-70 of the '036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Teva commercially manufactures, uses, offers for sale, or sells within the United States, or imports into the United States, the Teva Generic Products, or induces or contributes to any such conduct, it would further infringe these claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent under 35 U.S.C. § 271(a), (b), and/or (c).

33. Teva has infringed these claims under 35 U.S.C. § 271(e)(2)(A), and will further infringe these claims under 35 U.S.C. § 271(a), (b), and/or (c), because, *inter alia,* the Teva Generic Products and the methods of using the Teva Generic Products, *e.g.*, by doctors, pharmacists, healthcare providers and patients, according to the proposed package insert will meet each and every claim element of one or more of Claims 1-70 of the '036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent either literally or under the doctrine of equivalents.

34. Upon information and belief, Teva has participated in, contributed to, aided, abetted, and/or induced infringement of the '036 patent, the '727 patent, the '947 patent, the '409

9

patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent and/or will participate in, contribute to, aid, abet, and/or induce infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent once the Teva Generic Products are commercially made, used, offered for sale, or sold in the United States, or imported into the United States.

35.    Upon information and belief, Teva has knowledge that if it were to receive approval from the FDA to market the Teva Generic Products described in ANDA No. 209568 and make the Teva Generic Products available for sale and/or use by others, *e.g.*, by doctors, pharmacists, healthcare providers and patients, during the proposed shelf life of the products before expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, such activities would result in the sale and/or use of a product especially made for an infringing use.   Upon information and belief, Teva has knowledge of such infringing use and also knows that the products described in ANDA No. 209568 are not a staple article or commodity of commerce suitable for substantial noninfringing use, but rather are especially made and/or adapted for use in the direct infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

36.    Upon information and belief, Teva was aware of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent prior to filing ANDA No. 209568, including its § 505(j)(2)(A)(vii)(IV) allegations with respect to those patents.  Upon information and belief, the proposed label for the Teva Generic Products will induce others, *e.g.*, doctors, pharmacists, healthcare providers and patients, to infringe the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526

patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, and based on Teva's § 505(j)(2)(A)(vii)(IV) allegations, Teva possesses the specific intent to encourage others to infringe.

37.    Teva's actions render this an exceptional case under 35 U.S.C. § 285.

38.    Plaintiffs will be irreparably harmed by Teva's infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

### Count II – Patent Infringement by Mylan

39.    Upon information and belief, on or before November 2, 2016, Mylan submitted ANDA No. 209564 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  ANDA No. 209564 seeks FDA approval for the commercial manufacture, use, and sale of generic capsule products containing 145 μg and 290 μg of linaclotide as the active ingredient ("the Mylan Generic Products").  ANDA No. 209564 specifically seeks FDA approval to market the Mylan Generic Products prior to the expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

40.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, ANDA No. 209564 alleges that the claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the Mylan Generic Products.  None of the Plaintiffs received written notification of ANDA No. 209564 and its § 505(j)(2)(A)(vii)(IV) allegations any earlier than November 3, 2016.

41.    Mylan's submission of ANDA No. 209564 to the FDA, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of one or more of Claims 1-70 of the

'036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Mylan commercially manufactures, uses, offers for sale, or sells within the United States, or imports into the United States, the Mylan Generic Products, or induces or contributes to any such conduct, it would further infringe these claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent under 35 U.S.C. § 271(a), (b), and/or (c).

42.     Mylan has infringed these claims under 35 U.S.C. § 271(e)(2)(A), and will further infringe these claims under 35 U.S.C. § 271(a), (b), and/or (c), because, *inter alia,* the Mylan Generic Products and the methods of using the Mylan Generic Products, *e.g.*, by doctors, pharmacists, healthcare providers and patients, according to the proposed package insert will meet each and every claim element of one or more of Claims 1-70 of the '036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent either literally or under the doctrine of equivalents.

43.     Upon information and belief, Mylan has participated in, contributed to, aided, abetted, and/or induced infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent and/or will participate in, contribute to, aid, abet, and/or induce infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628

patent, and the '030 patent once the Mylan Generic Products are commercially made, used, offered for sale, or sold in the United States, or imported into the United States.

44.     Upon information and belief, Mylan has knowledge that if it were to receive approval from the FDA to market the Mylan Generic Products described in ANDA No. 209564 and make the Mylan Generic Products available for sale and/or use by others, *e.g.*, by doctors, pharmacists, healthcare providers and patients, during the proposed shelf life of the products before expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, such activities would result in the sale and/or use of a product especially made for an infringing use.  Upon information and belief, Mylan has knowledge of such infringing use and also knows that the products described in ANDA No. 209564 are not a staple article or commodity of commerce suitable for substantial noninfringing use, but rather are especially made and/or adapted for use in the direct infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

45.     Upon information and belief, Mylan was aware of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent prior to filing ANDA No. 209564, including its § 505(j)(2)(A)(vii)(IV) allegations with respect to those patents.  Upon information and belief, the proposed label for the Mylan Generic Products will induce others, *e.g.*, doctors, pharmacists, healthcare providers and patients, to infringe the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, and based on Mylan's § 505(j)(2)(A)(vii)(IV) allegations, Mylan possesses the specific intent to encourage others to infringe.

46.    Mylan's actions render this an exceptional case under 35 U.S.C. § 285.

47.    Plaintiffs will be irreparably harmed by Mylan's infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

## Count III – Patent Infringement by Sandoz

48.    Upon information and belief, on or before November 1, 2016, Sandoz submitted ANDA No. 209630 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  ANDA No. 209630 seeks FDA approval for the commercial manufacture, use, and sale of generic capsule products containing 145 μg and 290 μg of linaclotide as the active ingredient ("the Sandoz Generic Products").  ANDA No. 209630 specifically seeks FDA approval to market the Sandoz Generic Products prior to the expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

49.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, ANDA No. 209630 alleges that the claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the Sandoz Generic Products.  None of the Plaintiffs received written notification of ANDA No. 209630 and its § 505(j)(2)(A)(vii)(IV) allegations any earlier than November 3, 2016.

50.    Sandoz's submission of ANDA No. 209630 to the FDA, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of one or more of Claims 1-70 of the '036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent under

14

35 U.S.C. § 271(e)(2)(A).  Moreover, if Sandoz commercially manufactures, uses, offers for sale, or sells within the United States, or imports into the United States, the Sandoz Generic Products, or induces or contributes to any such conduct, it would further infringe these claims of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent under 35 U.S.C. § 271(a), (b), and/or (c).

51.    Sandoz has infringed these claims under 35 U.S.C. § 271(e)(2)(A), and will further infringe these claims under 35 U.S.C. § 271(a), (b), and/or (c), because, *inter alia,* the Sandoz Generic Products and the methods of using the Sandoz Generic Products, *e.g.*, by doctors, pharmacists, healthcare providers and patients, according to the proposed package insert will meet each and every claim element of one or more of Claims 1-70 of the '036 patent, Claims 1-6 of the '727 patent, Claims 1-16 of the '947 patent, Claims 1-7 of the '409 patent, Claims 1-2 of the '526 patent, Claims 1-11 of the '553 patent, Claims 1-10 of the '573 patent, Claims 1-26 of the '628 patent, and Claims 6, 18, and 19 of the '030 patent either literally or under the doctrine of equivalents.

52.    Upon information and belief, Sandoz has participated in, contributed to, aided, abetted, and/or induced infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent and/or will participate in, contribute to, aid, abet, and/or induce infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent once the Sandoz Generic Products are commercially made, used, offered for sale, or sold in the United States, or imported into the United States.

53.    Upon information and belief, Sandoz has knowledge that if it were to receive approval from the FDA to market the Sandoz Generic Products described in ANDA No. 209630

and make the Sandoz Generic Products available for sale and/or use by others, *e.g.*, by doctors, pharmacists, healthcare providers and patients, during the proposed shelf life of the products before expiration of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, such activities would result in the sale and/or use of a product especially made for an infringing use. Upon information and belief, Sandoz has knowledge of such infringing use and also knows that the products described in ANDA No. 209630 are not a staple article or commodity of commerce suitable for substantial noninfringing use, but rather are especially made and/or adapted for use in the direct infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent.

54.     Upon information and belief, Sandoz was aware of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent prior to filing ANDA No. 209630, including its § 505(j)(2)(A)(vii)(IV) allegations with respect to those patents. Upon information and belief, the proposed label for the Sandoz Generic Products will induce others, *e.g.*, doctors, pharmacists, healthcare providers and patients, to infringe the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, and based on Sandoz's § 505(j)(2)(A)(vii)(IV) allegations, Sandoz possesses the specific intent to encourage others to infringe.

55.     Sandoz's actions render this an exceptional case under 35 U.S.C. § 285.

56.     Plaintiffs will be irreparably harmed by Sandoz's infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

**Count IV – Patent Infringement by Aurobindo**

57.    Upon information and belief, on or before October 17, 2016, Aurobindo submitted ANDA No. 209611 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).    ANDA No. 209611 seeks FDA approval for the commercial manufacture, use, and sale of generic capsule products containing 145 μg and 290 μg of linaclotide as the active ingredient ("the Aurobindo Generic Products").    ANDA No. 209611 specifically seeks FDA approval to market the Aurobindo Generic Products prior to the expiration of the '573 patent, the '628 patent, and the '030 patent.

58.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, ANDA No. 209611 alleges that the claims of the '573 patent, the '628 patent, and the '030 patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the Aurobindo Generic Products.    Upon information and belief, ANDA No. 209611 does not contain any allegations under § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act with respect to the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, and/or the '553 patent.    None of the Plaintiffs received written notification of ANDA No. 209611 and its § 505(j)(2)(A)(vii)(IV) allegations with respect to the '573 patent, the '628 patent, and the '030 patent any earlier than October 18, 2016.

59.    Aurobindo's submission of ANDA No. 209611 to the FDA, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of one or more of Claims 6, 18, and 19 of the '030 patent under 35 U.S.C. § 271(e)(2)(A).    Moreover, if Aurobindo commercially manufactures, uses, offers for sale, or sells within the United States, or imports into the United States, the Aurobindo Generic Products, or induces or contributes to any such conduct, it would further infringe these claims of the '030 patent under 35 U.S.C. § 271(a), (b), and/or (c).

17

60.   Aurobindo has infringed these claims under 35 U.S.C. § 271(e)(2)(A), and will further infringe one or more of these claims under 35 U.S.C. § 271(a), (b), and/or (c), because, *inter alia*, the Aurobindo Generic Products and the methods of using the Aurobindo Generic Products, *e.g.*, by doctors, pharmacists, healthcare providers and patients, according to the proposed package insert will meet each and every claim element of one or more of Claims 6, 18, and 19 of the '030 patent either literally or under the doctrine of equivalents.   Relying on representations set out in Aurobindo's notice of Paragraph IV Certification pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95, Plaintiffs do not allege at this time that the Aurobindo Generic Products infringe the '573 patent or the '628 patent.   To the extent that discovery in this action demonstrates that assertion of the '573 patent and/or the '628 patent against the Aurobindo Generic Products is warranted, Plaintiffs reserve the right to assert them.

61.   Upon information and belief, each of Aurobindo Pharma Ltd. and Aurobindo Pharma USA, Inc. has participated in, contributed to, aided, abetted, and/or induced infringement of the '030 patent and/or will participate in, contribute to, aid, abet, and/or induce infringement of the '030 patent once the Aurobindo Generic Products are commercially made, used, offered for sale, or sold in the United States, or imported into the United States.   Each of Aurobindo Pharma Ltd. and Aurobindo Pharma USA, Inc. is jointly and severally liable for the infringement of the '030 patent.

62.   Upon information and belief, Aurobindo has knowledge that if it were to receive approval from the FDA to market the Aurobindo Generic Products described in ANDA No. 209611 and make the Aurobindo Generic Products available for sale and/or use by others, *e.g.*, by doctors, pharmacists, healthcare providers and patients, during the proposed shelf life of the products before expiration of the '030 patent, such activities would result in the sale and/or use of

a product especially made for an infringing use. Upon information and belief, Aurobindo has knowledge of such infringing use and also knows that the products described in ANDA No. 209611 are not a staple article or commodity of commerce suitable for substantial noninfringing use, but rather are especially made and/or adapted for use in the direct infringement of the '030 patent.

63.     Upon information and belief, Aurobindo was aware of the '030 patent prior to filing ANDA No. 209611, including its § 505(j)(2)(A)(vii)(IV) allegations with respect to that patent. Upon information and belief, the proposed label for the Aurobindo Generic Products will induce others, *e.g.*, doctors, pharmacists, healthcare providers and patients, to infringe the '030 patent, and based on Aurobindo's § 505(j)(2)(A)(vii)(IV) allegations, Aurobindo possesses the specific intent to encourage others to infringe.

64.     Aurobindo's actions render this an exceptional case under 35 U.S.C. § 285.

65.     Plaintiffs will be irreparably harmed by Aurobindo's infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.     That Teva has infringed the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent;

B.     That Mylan has infringed the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent;

C.     That Sandoz has infringed the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent;

D.     That Aurobindo has infringed the '030 patent;

E.      That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Teva's ANDA identified in this Complaint shall not be earlier than the expiration date of the last to expire of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, including any extensions or exclusivities;

F.      That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Mylan's ANDA identified in this Complaint shall not be earlier than the expiration date of the last to expire of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, including any extensions or exclusivities;

G.      That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Sandoz's ANDA identified in this Complaint shall not be earlier than the expiration date of the last to expire of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, including any extensions or exclusivities;

H.      That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Aurobindo's ANDA identified in this Complaint shall not be earlier than the expiration date of the '030 patent, including any extensions or exclusivities;

I.      That Teva, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, are preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, or selling in the United States, or importing into the United States, the Teva Generic Products, and any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent,

20

the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration date of the last to expire of those patents, including any extensions or exclusivities;

J.    That Plaintiffs be awarded monetary relief if Teva commercially makes, uses, offers for sale, or sells in the United States, or imports into the United States, the Teva Generic Products, or any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration of the last to expire of those patents, including any extensions or exclusivities, and that such monetary relief be awarded to Plaintiffs with prejudgment interest;

K.    That Mylan, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, are preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, or selling in the United States, or importing into the United States, the Mylan Generic Products, and any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration date of the last to expire of those patents, including any extensions or exclusivities;

L.    That Plaintiffs be awarded monetary relief if Mylan commercially makes, uses, offers for sale, or sells in the United States, or imports into the United States, the Mylan Generic Products, or any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration of the last to expire of

21

those patents, including any extensions or exclusivities, and that such monetary relief be awarded to Plaintiffs with prejudgment interest;

M.      That Sandoz, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, are preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, or selling in the United States, or importing into the United States, the Sandoz Generic Products, and any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration date of the last to expire of those patents, including any extensions or exclusivities;

N.      That Plaintiffs be awarded monetary relief if Sandoz commercially makes, uses, offers for sale, or sells in the United States, or imports into the United States, the Sandoz Generic Products, or any other product that infringes or induces or contributes to the infringement of the '036 patent, the '727 patent, the '947 patent, the '409 patent, the '526 patent, the '553 patent, the '573 patent, the '628 patent, and the '030 patent, prior to the expiration of the last to expire of those patents, including any extensions or exclusivities, and that such monetary relief be awarded to Plaintiffs with prejudgment interest;

O.      That Aurobindo, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, are preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, or selling in the United States, or importing into the United States, the Aurobindo Generic Products, and any other product that infringes or induces or contributes to the infringement of the '030 patent, prior to the expiration date of the '030 patent, including any extensions or exclusivities;

22

P.      That Plaintiffs be awarded monetary relief if Aurobindo commercially makes, uses, offers for sale, or sells in the United States, or imports into the United States, the Aurobindo Generic Products, or any other product that infringes or induces or contributes to the infringement of the '030 patent, prior to the expiration of the '030 patent, including any extensions or exclusivities, and that such monetary relief be awarded to Plaintiffs with prejudgment interest;

Q.      That Plaintiffs be awarded the attorneys' fees, costs, and expenses that they incur prosecuting this action under 35 U.S.C. § 285; and

R.      That Plaintiffs be awarded such other and further relief as this Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

OF COUNSEL:

Peter J. Armenio, P.C.
Robert B. Wilson
Krista M. Rycroft
Ashley M. Fry
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

*Attorneys for Plaintiffs*

Gregory A. Morris
Vikram A. Mathrani
HONIGMAN MILLER SCHWARTZ
 & COHN LLP
One South Wacker Drive
Chicago, IL  60606
(312) 701-9300

November 30, 2016

23