IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLERGAN SALES, LLC, FOREST )
LABORATORIES HOLDINGS, LTD., )
ALLERGAN USA, INC., and IRONWOOD )
PHARMACEUTICALS, INC. )
                                        )
           Plaintiffs, )    C.A. No. 16-1114 (RGA)
                                        )    Consolidated
                                        )
       v. )
                                          )    **REDACTED - PUBLIC**
TEVA PHARMACEUTICALS USA, INC. )    **VERSION**
and SANDOZ INC. )
                                          )
           Defendants. )
                                          )

## JOINT PROPOSED FINAL PRETRIAL ORDER

### VOLUME 1 OF 2 – EXHIBITS 1-8

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | SHAW KELLER LLP |
| Jack B. Blumenfeld (#1014) | John W. Shaw (# 3362) |
| Jeremy A. Tigan (#5239) | Karen E. Keller (# 4489) |
| 1201 North Market Street | Andrew E. Russell (# 5382) |
| P.O. Box 1347 | David M. Fry (# 5486) |
| Wilmington, DE 19899 | 1105 N. Market Street, 12th Floor |
| (302) 658-9200 | Wilmington, DE 19801 |
| jblumenfeld@mnat.com | (302) 298-0700 |
| jtigan@mnat.com | jshaw@shawkeller.com |
| | kkeller@shawkeller.com |
| *Attorneys for Plaintiffs* | arussell@shawkeller.com |
| | dfry@shawkeller.com |
| OF COUNSEL: | |
| | *Attorneys for Defendant Teva* |
| Peter J. Armenio, P.C. | *Pharmaceuticals USA, Inc.* |
| Robert B. Wilson | |
| Anne S. Toker | OF COUNSEL: |
| Krista M. Rycroft | |
| Sky Adams | George C. Lombardi |
| Christopher P. Hill | Christopher B. Essig |
| Allyson Parks | Ivan M. Poullaos |
| QUINN EMANUEL URQUHART | Jason Z. Pesick |
|   & SULLIVAN, LLP | Nathan R. Gilbert |
| 51 Madison Avenue | Courtney S. Block |
| New York, NY 10010 | WINSTON & STRAWN LLP |
| (212) 849-7000 | 35 West Wacker Drive |

Gregory A. Morris
Vikram A. Mathrani
Simeon G. Papacostas
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 701-9300

Chicago, IL 60601
(312) 558-5600

Noorossadat Torabi
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500

Sharon Lin
WINSTON & STRAWN LLP
1700 K ST NW
Washington, DC 20006
(202) 282-5000

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
dab@pgmhlaw.com

*Attorneys for Defendant Sandoz, Inc.*

OF COUNSEL:

William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Jeffery A. Marx
Kevin P. Burke
Lauren M. Lesko
Cynthia H. Sun
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-6304

Original Filing Date: December 20, 2019
Redacted Filing Date: December 27, 2019

# TABLE OF CONTENTS

I.     NATURE OF THE CASE AND PLEADINGS (LR 16.3(c)(1)) ....................................1

     A.     Plaintiffs, Linzess®, and the Patents-In-Suit ...........................................................1

     B.     Teva's ANDA Nos. 209568 and 211255 ..................................................................3

     C.     Sandoz's ANDA No. 209630 ...................................................................................6

II.     BASIS FOR FEDERAL JURISDICTION (LR 16.3(c)(2)) ................................................7

III.     JOINT STATEMENT OF ADMITTED FACTS (LR 16.3(c)(3)) .....................................8

IV.     STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED (LR 16.3(c)(4)).................................................................................................................8

V.     STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED (LR 16.3(c)(5)).................................................................................................................8

VI.     EXHIBIT LISTS WITH OBJECTIONS (LR 16.3(c)(6))..................................................8

     A.     Exhibits .....................................................................................................................8

     B.     Demonstrative Exhibits............................................................................................12

VII.     WITNESSES TO BE CALLED IN PERSON OR BY DEPOSITION (LR 16.3(c)(7)).................................................................................................................14

     A.     List of Witnesses to Be Called................................................................................14

     B.     Deposition Designations ..........................................................................................15

VIII.     STATEMENT OF THE INTENDED PROOFS (LR 16.3(c)(8)-(10))..............................17

IX.     AMENDMENT OF THE PLEADINGS (LR 16.3(c)(11))...............................................18

X.     CERTIFICATION OF SETTLEMENT EFFORTS (LR 16.3(c)(12)) ..............................18

XI.     OTHER MATTERS (LR 16.3(c)(13)).............................................................................18

     A.     Stipulations ..............................................................................................................18

     B.     Motions *in Limine* ..................................................................................................20

     C.     Expected Duration of Trial ......................................................................................20

     D.     Type of Trial ............................................................................................................22

E.      Order of Presentation ............................................................................22

F.      Protective Order and Corporate Representatives in the Courtroom ......................23

G.      Post-Trial Briefing ................................................................................23

XII.   ORDER TO CONTROL COURSE OF ACTION (LR 16.3(d)(4))...................................24

## INDEX OF EXHIBITS

**STATEMENT OF ADMITTED FACTS WHICH REQUIRE NO PROOF**

Joint                                                         Exhibit 1

**STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED**

Plaintiffs                                                   Exhibit 2
Defendants                                                   Exhibit 3

**STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

Plaintiffs                                                   Exhibit 4
Defendants                                                   Exhibit 5

**TRIAL EXHIBITS**

Joint                                                        Exhibit 6
Plaintiffs                                                   Exhibit 7
Defendants                                                   Exhibit 8

**TRIAL WITNESSES**

Plaintiffs                                                   Exhibit 9
    *Curriculum Vitae* of Lin Chang, M.D.                    Exhibit 9.A
    *Curriculum Vitae* of William DeGrado, Ph.D.            Exhibit 9.B
    *Curriculum Vitae* of Kim E. Barrett                     Exhibit 9.C
    *Curriculum Vitae* of Alexander M. Klibanov, Ph.D.      Exhibit 9.D

Defendants                                                   Exhibit 10
    *Curriculum Vitae* of Stephen B.H. Kent, Ph.D.          Exhibit 10.A
    *Curriculum Vitae* of Stephen B.H. Kent, Ph.D.          Exhibit 10.B
    *Curriculum Vitae* of Jeffrey L. Barnett, M.D.          Exhibit 10.C
    *Curriculum Vitae* of Pardeep K. Gupta, Ph.D.           Exhibit 10.D
    *Curriculum Vitae* of DeForest McDuff, Ph.D.            Exhibit 10.E

**DEPOSITION DESIGNATIONS**

Plaintiffs                                                   Exhibit 11
Defendants                                                   Exhibit 12

**STATEMENT OF INTENDED PROOFS**

Plaintiffs                                                   Exhibit 13
Defendants                                                   Exhibit 14

**MOTIONS *IN LIMINE***

Plaintiffs' Opening MIL 1                                    Exhibit 15.A
Defendants' Opp. to MIL 1                                 Exhibit 15.B
Plaintiffs' Reply MIL 1                                        Exhibit 15.C

Defendants' Opening MIL 1                                Exhibit 16.A
Plaintiffs' Opp. to MIL 1                                     Exhibit 16.B
Defendants' Reply MIL 1                                   Exhibit 16.C

Plaintiffs Allergan Sales, LLC, Forest Laboratories Holdings, Ltd., Allergan USA, Inc., (collectively, "Allergan") and Ironwood Pharmaceuticals, Inc. ("Ironwood") (Allergan and Ironwood, collectively, "Plaintiffs") and Defendants Teva Pharmaceuticals USA, Inc. ("Teva") and Sandoz Inc. ("Sandoz") (Teva and Sandoz, collectively, "Defendants"), by their undersigned counsel, submit this proposed Joint Pretrial Order pursuant to D. Del. LR 16.3 and the Court's Scheduling Orders in this case (D.I. 44; D.I. 296).

## I.   NATURE OF THE CASE AND PLEADINGS (LR 16.3(c)(1))

### A.   Plaintiffs, Linzess®, and the Patents-In-Suit

1.     This consolidated civil action is based upon the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and arises from the filing of Abbreviated New Drug Applications ("ANDAs") with the U.S. Food and Drug Administration ("FDA") by Teva and Sandoz seeking to market generic versions of Plaintiffs' Linzess® brand (linaclotide) capsules prior to the expiration of several patents listed in *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") for Linzess®:  U.S. Patent Nos. 7,304,036 ("the '036 patent"), 7,371,727 ("the '727 patent"), 7,704,947 ("the '947 patent"), 8,080,526 ("the '526 patent"), 8,748,573 ("the '573 patent"), and 8,802,628 ("the '628 patent") (the "Patents-in-Suit").[1]

2.     Linzess® is available in three FDA-approved dosage strengths.  The 72 μg and 145 μg dosage strengths are indicated in adults for the treatment of chronic idiopathic constipation ("CIC").  The 290 μg dosage strength is indicated in adults for the treatment of irritable bowel syndrome with constipation ("IBS-C").  The '036 patent, the '727 patent, the '947 patent, and the '526 patent are all listed in the Orange Book for Linzess® brand 72 μg linaclotide

---

[1]   This consolidated action is the result of the consolidation for all purposes of Civil Action Nos. 16-1114 (RGA), 17-1481 (RGA), 18-171 (RGA), and 18-198 (RGA).  (C.A. No. 16-1114 (RGA):  D.I. 116, D.I. 134, and D.I. 144).

capsules.  The '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are all listed in the Orange Book for Linzess® brand 145 µg and 290 µg linaclotide capsules.

3.      Ironwood is the sole owner of the '036 patent, the '727 patent, the '947 patent, and the '526 patent, and Allergan is the exclusive licensee of the '036 patent, the '727 patent, the '947 patent, and the '526 patent.  Allergan and Ironwood are the sole owners of the '573 patent and the '628 patent.  Allergan holds New Drug Application ("NDA") 202-811 for all dosage strengths of Linzess® brand linaclotide capsules.  Ironwood and Allergan have standing to enforce each of the Patents-in-Suit.

4.      After the Court's entry of the parties' stipulations (C.A. No. 16-1114 (RGA):  D.I. 176, D.I. 179, D.I. 242, D.I. 244 and D.I. 279)—including a stipulation by Teva and Sandoz that their ANDAs and the accused dosage strengths of their respective proposed generic linaclotide products infringe and/or will infringe the asserted patent claims (D.I. 279; *see* Sections I.B and 1.C, below)—this trial involves Defendants' defenses and/or counterclaims of invalidity regarding:

- Claims 2, 9, 33, 37, 39, 43, and 44 of the '036 patent;

- Claims 3 and 6 of the '727 patent;

- Claims 2, 4, and 14 of the '947 patent;

- Claims 1 and 2 of the '526 patent;

- Claims 1-2 and 7-8 of the '573 patent; and

- Claims 1, 16, 17, 20, and 21 of the '628 patent.

(C.A. No. 16-1114 (RGA), D.I. 1, D.I. 20, D.I. 24, D.I. 29, D.I. 31, D.I. 174, D.I. 176, D.I. 179, D.I. 242, D.I. 244, and D.I. 279; C.A. No. 18-198 (RGA), D.I. 1, D.I. 7.)  None of the parties

identified any claim term(s)/phrase(s) for construction by the Court.  (C.A. No. 16-114 (RGA), D.I. 110.)

5.       Plaintiffs are represented by Morris, Nichols, Arsht & Tunnel LLP, Quinn Emanuel Urquhart & Sullivan LLP, and Honigman LLP.

**B.**      **Teva's ANDA Nos. 209568 and 211255**

6.       On or before October 21, 2016, Teva submitted ANDA No. 209568 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), including a Federal Food, Drug and Cosmetic Act § 505(j)(2)(A)(vii)(IV) allegation ("Paragraph IV Certification"), for the purposes of obtaining FDA approval to engage in the commercial manufacture, use, and sale of the proposed Teva generic linaclotide capsules (145 µg and 290 µg).  ANDA No. 209568 specifically seeks FDA approval to market the proposed Teva generic linaclotide capsules (145 µg and 290 µg) prior to the expiration of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent.

7.       In a letter dated October 21, 2016, which is described as being pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (a "Paragraph IV notice letter"), Teva advised Plaintiffs that ANDA No. 209568 included a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") alleging, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are "invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use or sale of the drug products described in Teva USA's ANDA No. 209568."

8.       On November 30, 2016, Plaintiffs filed a complaint, *inter alia*, against Teva -- C.A. No. 16-1114 (RGA) -- for infringement of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent.  Plaintiffs commenced the action within the

45-day period after receiving the October 21, 2016 Paragraph IV notice letter, as described in 21 U.S.C. § 355(j)(5)(B)(iii).  (C.A. No. 16-1114 (RGA), D.I. 1.)

9.     On January 20, 2017, Teva filed its Answer and Counterclaims, denying infringement of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent and alleging that the claims of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are not infringed and invalid.  (C.A. No. 16-1114 (RGA), D.I. 20.)

10.    On February 10, 2017, Plaintiffs filed their Answer to Teva's Counterclaims denying, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are invalid and not infringed by Teva's ANDA No. 209568 and the proposed Teva generic linaclotide capsules (145 µg and 290 µg).  (C.A. No. 16-1114 (RGA), D.I. 29.)

11.    On or before December 21, 2017, Teva also submitted ANDA No. 211255 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), including a Paragraph IV Certification, for the purposes of obtaining FDA approval to engage in the commercial manufacture, use, and sale of the proposed Teva generic linaclotide capsules (72 µg).  ANDA No. 211255 specifically seeks FDA approval to market the proposed Teva generic linaclotide capsules (72 µg) prior to the expiration of the '036 patent, the '727 patent, the '947 patent, and the '526 patent.

12.    In a letter dated December 21, 2017, which is described as being a Paragraph IV notice letter pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), Teva advised Plaintiffs that ANDA No. 211255 included a Paragraph IV certification alleging, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, and the '526 patent are "invalid, unenforceable, and/or will not be

infringed … by the importation, commercial manufacture, use, sale or offer for sale of Teva's proposed 72 mcg Linaclotide Capsules" described in Teva's ANDA No. 211255.

13.     On February 2, 2018, Plaintiffs filed a complaint against Teva -- C.A. No. 18-198 (RGA) – for infringement of the '036 patent, the '727 patent, the '947 patent, and the '526 patent.  Plaintiffs did not and do not allege that Teva's ANDA No. 211255 or the products described therein infringe the '573 patent or the '628 patent.  Plaintiffs commenced the action within the 45-day period after receiving the December 21, 2017 Paragraph IV notice letter, as described in 21 U.S.C. § 355(j)(5)(B)(iii).  (C.A. No. 18-198 (RGA), D.I. 1.)

14.     On February 26, 2018, Teva filed its Answer and Counterclaims, denying infringement of the '036 patent, the '727 patent, the '947 patent, and the '526 patent and alleging that the claims of the '036 patent, the '727 patent, the '947 patent, and the '526 patent are not infringed and invalid.  (C.A. No. 18-198 (RGA), D.I. 7.)

15.     On May 14, 2018, Plaintiffs filed their Answer to Teva's Counterclaims denying, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, and the '526 patent are invalid and not infringed by Teva's ANDA No. 211255 and the proposed Teva generic linaclotide capsules (72 µg).  (C.A. No. 16-1114 (RGA), D.I. 174.)

16.     C.A. No. 16-1114 (RGA) and C.A. No. 18-198 (RGA) were consolidated for all purposes into C.A. No. 16-1114 (RGA).  (C.A. No. 16-1114 (RGA), D.I. 114.)

17.     On April 30, 2019, Teva stipulated to infringement of Claims 2, 9, 39, 43, and 44 of the '036 patent, Claims 3 and 6 of the '727 patent, Claims 2, 4, and 14 of the '947 patent, and Claims 1 and 2 of the '526 patent with respect to its 72 mcg product; and Claims 2, 9, 33, 37, 39, 43, and 44 of the '036 patent, Claims 3 and 6 of the '727 patent, Claims 2, 4, and 14 of the '947 patent, Claims 1 and 2 of the '526 patent, Claims 1-2 and 7-8 of the '573 patent, and Claims 1,

16, 17, 20, and 21 of the '628 patent with respect to its 145 and 290 mcg products.  (D.I. 279, ¶¶ 4-7.)  Plaintiffs did not assert any claims of the '573 or '628 patent against Teva with respect to its 72 mcg product (ANDA No. 211255).

18.     Teva is represented by Shaw Keller LLP and Winston & Strawn LLP.

**C.     Sandoz's ANDA No. 209630**

19.     On or before August 30, 2016, Sandoz submitted ANDA No. 209630 to the FDA under § 505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), including a Paragraph IV Certification, for the purposes of obtaining FDA approval to engage in the commercial manufacture, use, and sale of the proposed Sandoz generic linaclotide capsules (145 µg and 290 µg).  ANDA No. 209630 specifically seeks FDA approval to market the proposed Sandoz generic linaclotide capsules (145 µg and 290 µg) prior to the expiration of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent.

20.     In a letter dated November 1, 2016, which is described as being a Paragraph IV notice letter pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), Sandoz advised Plaintiffs that ANDA No. 209630 included a Paragraph IV alleging, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are "invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, sale, offer for sale, and/or importation of the drug products described in Sandoz's ANDA No. 209630."

21.     On November 30, 2016, Plaintiffs filed a complaint, *inter alia*, against Sandoz for patent infringement the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent.  Plaintiffs commenced the action within the 45-day period after receiving the November 1, 2016 Paragraph IV notice letter, as described in 21 U.S.C. § 355(j)(5)(B)(iii).  (C.A. No. 16-1114 (RGA), D.I. 1.)

22.     On January 30, 2017, Sandoz filed its Answer and Counterclaims, denying infringement of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent and alleging that the claims of the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are not infringed and invalid. (C.A. No. 16-1114 (RGA), D.I. 24.)

23.     On February 21, 2017, Plaintiffs filed their Answer to Sandoz's Counterclaims denying, *inter alia*, that the '036 patent, the '727 patent, the '947 patent, the '526 patent, the '573 patent, and the '628 patent are invalid and not infringed by Sandoz's ANDA No. 209630 and the proposed Sandoz generic linaclotide capsules (145 µg and 290 µg).  (C.A. No. 16-1114 (RGA), D.I. 31.)

24.     On April 30, 2019, Sandoz stipulated to infringement of Claims 2, 9, 33, 37, 39, 43, and 44 of the '036 patent, Claims 3 and 6 of the '727 patent, Claims 2, 4, and 14 of the '947 patent, Claims 1 and 2 of the '526 patent, Claims 1-2 and 7-8 of the '573 patent, and Claims 1, 16, 17, 20, and 21 of the '628 patent.  (D.I. 279, ¶¶ 8-9.)

25.     Sandoz is represented by Phillips, Goldman, McLaughlin & Hall, P.A. and Rakoczy Molino Mazzochi Siwik LLP.

## II.     BASIS FOR FEDERAL JURISDICTION (LR 16.3(c)(2))

26.     This consolidated action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  No party contests subject matter jurisdiction for the purpose of this action.

27.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).  No party contests venue for the purpose of this action.

28.     No party contests personal jurisdiction for the purpose of this action.

7

### III.  JOINT STATEMENT OF ADMITTED FACTS (LR 16.3(c)(3))

29.     The parties' statement of admitted and uncontested facts is set forth in **Exhibit 1**. These uncontested facts require no proof at trial and are part of the evidentiary record in this case.

30.     The parties agree that, to streamline witness examinations at trial, it would be beneficial to continue to meet and confer regarding additional joint uncontested facts.  To the extent the parties are able to reach agreement regarding any additional uncontested facts, such additional uncontested facts will be provided to the Court before trial commences.

### IV.  STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED (LR 16.3(c)(4))

31.     Plaintiffs' Statement of Issues of Fact That Remain to Be Litigated is attached as **Exhibit 2**.

32.     Defendants' Statement of Issues of Fact That Remain to Be Litigated is attached as **Exhibit 3**.

### V.  STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED (LR 16.3(c)(5))

33.     Plaintiffs' Statement of Issues of Law That Remain to Be Litigated is attached as **Exhibit 4**.

34.     Defendants' Statement of Issues of Law That Remain to Be Litigated is attached as **Exhibit 5**.

### VI.  EXHIBIT LISTS WITH OBJECTIONS (LR 16.3(c)(6))

#### A.  Exhibits

35.     The parties' joint list of trial exhibits, subject to continued meet and confer discussions in advance of and during trial, is attached **as Exhibit 6**.  Joint exhibits will be identified with JTX numbers.

36.     Plaintiffs' list of exhibits they intend to offer at trial, and Defendants' objections thereto, is attached as **Exhibit 7**.  Plaintiffs' exhibits will be identified with PTX numbers.

37.     Defendants' list of exhibits they intend to offer at trial, and Plaintiffs' objections thereto, is attached as **Exhibit 8**.  Defendants' exhibits will be identified with DTX numbers.

38.     Subject to the provisions of Paragraph 40, this joint pretrial order contains the maximum universe of exhibits to be used by a party at trial as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, for good cause shown.  Each party reserves the right to add additional exhibits to its exhibit list by agreement of the parties or for good cause shown after submission of this order to the Court.

39.     Should a party wish to add additional exhibits to its exhibit list after submission of this order to the Court, the parties shall promptly meet and confer and any disputes may be raised at the pretrial conference or at the beginning of the trial day during trial.

40.     Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission.

41.     Exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

42.     No exhibit will be admitted unless offered into evidence through a witness or to the extent the parties reach agreement.  At some point before the completion of the witness's testimony, absent leave of Court, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by

exhibit number.

43.     Each party shall serve on opposing counsel by electronic mail a written list by exhibit number of trial exhibits that each party intends to use at trial during its opening statement or during direct examination of a witness according to the following schedule:

  a)  For exhibits to be used during opening statements, each party shall exchange a list of such exhibits by 3:00 p.m. one calendar day before the opening statement is expected to take place.   The party receiving the identification of the exhibits intended for use during the opening statement will inform the identifying party of any objections by 6:00 p.m. ET on the calendar day before opening statements, and the parties shall meet and confer at 7:00 p.m. ET that same evening.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of the day such opening is scheduled to take place or as otherwise directed by the Court.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

  b)  For exhibits to be used during the direct examination of a witness, each party shall exchange a list of such exhibits by 6:00 p.m. ET one calendar day before such direct examination is expected to take place.   The party receiving the identification of the exhibits intended for use during direct examination of a witness will inform the identifying party of any objections by 8:00 p.m. ET that same day, and the parties shall meet and confer at 9:00 p.m. ET that evening.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits

10

shall bring its objections to the Court's attention at the beginning of the trial or at the beginning of the day the witness is expected to testify, whichever is later, or as otherwise directed by the Court.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.  This advance notification provision for exhibits does not apply to exhibits to be used during cross-examination.

44.     Exhibits not objected to that are used with a witness at trial will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony.  Nothing herein shall be construed as a stipulation or admission that any document is entitled to any weight in deciding the merits of this case.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

45.     The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side.  Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

46.     Each party reserves the right to offer exhibits set forth on the other party's exhibit list, even if not set forth on its own exhibit list.  Any trial exhibit, once admitted, may be used equally by either party subject to any limitations as to its admission into evidence.

47.     The parties reserve their rights to raise all objections to exhibits as set forth on the trial exhibit lists.  The listing of a trial exhibit does not constitute an admission as to the admissibility of the trial exhibit (*i.e.*, a waiver of any applicable objection).  Each party reserves

11

the right to object to the relevance or admissibility of any evidence offered by the other party (or jointly), at the time such evidence is offered, in view of the specific context in which such evidence is offered, or for any other reason as set forth in the Federal Rules of Evidence, the Local Rules, or any applicable principle of law.

48.     Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original. Legible copies of United States patents and the contents of the Patent and Trademark Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

### B.     Demonstrative Exhibits

49.     Exhibits that the parties intend to use at trial solely for demonstrative purposes without offering them into evidence ("demonstrative exhibits") do not need to be described on the respective trial exhibit lists.  Plaintiffs' demonstratives will be identified with PDX numbers. Defendants' demonstratives will be identified with DDX numbers.

50.     Each party shall serve on opposing counsel by electronic mail and/or electronic media any demonstrative exhibit that each party intends to use at trial during opening statement or during direct examination of a witness according to the following schedule:

a)  For demonstrative exhibits to be used during opening statements, each party shall exchange such demonstratives by 3:00 p.m. ET one calendar day before the opening statement is expected to take place.  The receiving party will inform the identifying party of any objections by 6:00 p.m. ET on the calendar day before opening statements, and the parties will meet and confer at 7:00 p.m. ET that same day.  If good faith efforts to resolve the objections fail, the party objecting to

12

the demonstrative shall bring its objections to the to the Court's attention at the beginning of the day such opening is scheduled to take place or as otherwise directed by the Court.   Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of objection to the demonstrative exhibit. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

b)   For demonstrative exhibits to be used in connection with direct examination of a witness, each party shall exchange such demonstratives by 6:00 p.m. ET one calendar day before such direct examination is expected to take place.   The receiving party will inform the identifying party of any objections by 8:00 p.m. ET on the day of receipt, and the parties will meet and confer at 9:00 p.m. ET that same day.  If good faith efforts to resolve the objections fail, the party objecting to the demonstrative shall bring its objections to the Court's attention at the beginning of the day on which the witness is expected to testify or as otherwise directed by the Court.   Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of objection to the demonstrative exhibit. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

51.    The party seeking to use a demonstrative exhibit in connection with opening statements or direct examination will provide a color representation of the exhibit to the other side in PDF or PPT format.  However, for video or animations, the party seeking to use the

13

demonstrative will provide it to the other side in an appropriate electronic format to view the video or animation.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

52.     These provisions regarding demonstrative exhibits do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use in connection with direct testimony or cross-examination.

## VII.   WITNESSES TO BE CALLED IN PERSON OR BY DEPOSITION (LR 16.3(c)(7))

### A.     List of Witnesses to Be Called

53.     Plaintiffs' list of fact and expert witnesses they may call at trial, either live or by deposition, is attached as **Exhibit 9**.  Copies of the *curricula vitae* for Plaintiffs' experts are attached as **Exhibits 9A – 9D**.

54.     Defendants' list of fact and expert witnesses they may call at trial, either live or by deposition, is attached as **Exhibit 10**.  Copies of the *curricula vitae* for Defendants' experts are attached as **Exhibits 10A – 10E**.

55.     The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person or by deposition.  Any witness not listed in **Exhibits 9** and **10** will be precluded from testifying absent good cause shown.  Such good cause shall include, but is not limited to, testimony required to authenticate any documents subject to an authenticity objection.

56.     Each party shall serve on opposing counsel by electronic mail a list of the witnesses (whether live or by deposition testimony) that the party intends to call at trial, in the order that such witnesses will be called, by 6:00 p.m. ET two calendar days before such witness

14

will be called to testify.   For example, if the party expects to conduct the examination on Tuesday, notice should be given to the opposing party by 6:00 p.m. on Sunday.   The other parties shall identify any objections to such witness(es) by 6:00 p.m. the following day, and the parties shall meet and confer to resolve any objections by 9:00 p.m. that same evening.   If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention at the beginning of the trial or at the beginning of the day prior to the witnesses' expected testimony, whichever is later.   Each party shall update its list of expected witnesses by 6:00 p.m. at the end of each trial day.

### B.       Deposition Designations

57.     For witnesses that Plaintiffs may call at trial by deposition, Plaintiffs' deposition designations, along with Defendants' objections thereto and counter-designations, and Plaintiffs' objections to Defendants' counter-designations, are attached as **Exhibit 11** (charts of designations and objections).

58.     For witnesses that Defendants may call at trial by deposition, Defendants' deposition designations, along with Plaintiffs' objections thereto and counter-designations, and Defendants' objections to Plaintiffs' counter-designations, are attached as **Exhibit 12** (charts of designations and objections).

59.     Each party shall serve on opposing counsel by electronic mail a written list of the final remaining pages and lines of each deposition transcript (i.e., the subset of deposition designations already disclosed in **Exhibits 11 and 12** and any timely supplements thereto), prior to reading or playing a video of the deposition at trial (other than for impeachment of a witness or cross-examination) that a party intends to use at trial by 6:00 p.m. ET *three* calendar days before such deposition designation is expected to be used.   The party receiving the identification of deposition designations will inform the identifying party of any objections and counter-

designations by 6:00 p.m. ET *two* calendar days before such deposition designation is expected to be used.  The parties shall meet and confer by 9:00 p.m. ET that evening in a good faith effort to discuss and resolve any objections to the deposition designations.  If good faith efforts to resolve the objections fail, the party objecting to the testimony by deposition shall, no later than 12:00 p.m. (noon) *one* calendar day before the witness is expected to be called at trial, submit to the Court, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis of the objection and the offering party's response to it.  Failure to conform to this procedure will result in having the objection denied without hearing.

60.    [*Plaintiffs' Proposal*:  If deposition testimony is to be presented by video, then the party playing the designated testimony shall also serve the other party with electronic video clips of all testimony to be played by 7:00 p.m. one calendar day before the witness is to be called at trial.]

61.    [*Defendants' Response*:  Plaintiffs' proposal should be denied because it is unnecessary and unduly burdensome in view of the parties' agreement in paragraph 59 to serve a written list of the deposition designations each party intends to enter into evidence three calendar days before such deposition designation is expected to be used.  There is no reason to further require the parties to serve electronic video clips of this same testimony by 7:00 p.m. of the next day.]

62.    Each party reserves the right to read or play as counter-designations any of the other party's affirmative deposition designations that are not read or played at trial, subject to the

limitations set forth in Fed. R. Evid. 106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence, Rule of Civil Procedure, or Local Rule.

63.     To the extent that deposition designations or counter-designations are admitted into evidence, they must either be played by video or read in open court.  The parties will request that the court reporter transcribe any deposition video testimony that is played in open Court.  If a party opts to introduce deposition testimony, any counter-designation of that same witness's testimony must be submitted in the same medium, and the testimony designated by both parties will be played or read consecutively in the sequence in which the testimony was originally given at deposition.  To the extent deposition designations are read or played in open court, each party will be charged only the time taken to read or play its designations.  Prior to the introduction of deposition designations or counter-designations, counsel for the introducing party may provide a short, non-argumentative introduction that the parties agree is not evidence and for which the time will be charged against the introducing party.

64.     All irrelevant and redundant colloquy between counsel and objections will be eliminated when the deposition is presented at trial.  Any objections that the parties intend to seek a ruling on from the Court will be made at trial.

65.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## VIII.   STATEMENT OF THE INTENDED PROOFS (LR 16.3(c)(8)-(10))

66.     Plaintiffs' Statement of Intended Proof, including damages and remedies, is attached as **Exhibit 13**.

67.     Defendants' Statement of Intended Proof, including damages and remedies, is attached as **Exhibit 14**.

## IX.     AMENDMENT OF THE PLEADINGS (LR 16.3(c)(11))

68.     The parties agree that no further amendment of the pleadings is required.

## X.     CERTIFICATION OF SETTLEMENT EFFORTS (LR 16.3(c)(12))

69.     The parties certify that they have engaged in good-faith efforts to explore the resolution of the controversy by settlement and have been unable to reach a settlement at this time.

## XI.     OTHER MATTERS (LR 16.3(c)(13))

### A.     Stipulations

70.     The parties do not dispute the authenticity of any exhibit listed on **Exhibits 6 - 8** that on its face appears to have been authored by an employee, officer, or director of a party and begins with the following bates numbers designations:   IW_LINZ_IND, IW_LINZ, LINZ, LINZ_NDA, DEFS-LINA, SDZ.LIN, or TEVA-LINAC.   The parties further stipulate that the following documents are authentic under Fed. R. Evid. 901 and constitute business records of a regularly conducted activity under Fed. R. Evid. 803(6):

    a)   Documents sent to, or received from, the FDA by Plaintiffs and produced by Plaintiffs in this action, including NDA No. 202-811 for Linzess[®] (72 μg, 145 μg, and 290 μg linaclotide capsules), including any sequences, amendments, or supplements thereto, and any correspondence with FDA regarding NDA No. 202-811;

    b)   Documents sent to, or received from, the FDA by Teva and produced by Teva in this action, including Abbreviated New Drug Application ("ANDA") No. 209568 for a generic version of Linzess® (145 μg, 290 μg linaclotide capsules), including

any sequences, amendments, or supplements thereto, and any correspondence with FDA regarding ANDA No. 209568 (*see* D.I. 260);

c)   Documents sent to, or received from, the FDA by Teva and produced by Teva in this action, including ANDA No. 211255 for a generic version of Linzess® (72 µg linaclotide capsules), including any sequences, amendments, or supplements thereto, and any correspondence with FDA regarding ANDA No. 211255 (*see* D.I. 260); and,

d)   Documents sent to, or received from, the FDA by Sandoz and produced by Sandoz in this action, including ANDA No. 209630 for a generic version of Linzess® (145 µg, 290 µg linaclotide capsules), including any sequences, amendments, or supplements thereto, and any correspondence with FDA regarding ANDA No. 209630.

71.   Pursuant to D.I. 279, the asserted claims of the Patents-in-Suit are set forth in the following table.  Defendants have stipulated to infringement of those claims, to the extent they are valid and enforceable, for each respective ANDA:

| Patents-in-Suit | Teva ANDA 209568 (D.I. 279 at ¶¶ 4-5) | Teva ANDA 211255 (D.I. 279, at ¶¶ 6-7) | Sandoz ANDA 209630 (D.I. 279, at ¶¶ 8-9) |
|---|---|---|---|
| '036 patent | claims 2, 9, 33 37, 39, 43, 44 | claims 2, 9, 39, 43, 44 | claims 2, 9, 33, 37, 39, 43, 44 |
| '727 patent | claims 3, 6 | claims 3, 6 | claims 3, 6 |
| '947 patent | claims 2, 4, 14 | claims 2, 4, 14 | claims 2, 4, 14 |
| '526 patent | claims 1, 2 | claims 1, 2 | claims 1, 2 |
| '573 patent | claims 1, 2, 7, 8 | not asserted | claims 1, 2, 7, 8 |
| '628 patent | claims 1, 16, 17, 20, 21 | not asserted | claims 1, 16, 17, 20, 21 |

Thus, there is no issue of infringement for the parties to try or for the Court to decide at trial.

72.   Pursuant to D.I. 279, Defendants have stipulated for the purposes of this action that the commercial manufacture, use, and sale of Linzess® brand linaclotide capsules (145 µg

and 290 µg) is covered by Claims 2, 9, 33, 37, 39, 43, and 44 of the '036 patent, Claims 3 and 6 of the '727 patent, Claims 2, 4, and 14 of the '947 patent, Claims 1 and 2 of the '526 patent, Claims 1-2 and 7-8 of the '573 patent, and Claims 1, 16, 17, 20, and 21 of the '628 patent. (D.I. 279, ¶ 10.)

73.     Pursuant to D.I. 279, Defendants have stipulated for the purposes of this action that the commercial manufacture, use, and sale of Linzess® brand linaclotide capsules (72 µg) is covered by Claims 2, 9, 39, 43, and 44 of the '036 patent, Claims 3 and 6 of the '727 patent, Claims 2, 4, and 14 of the '947 patent, and Claims 1 and 2 of the '526 patent. (D.I. 279, ¶ 11.)

### B.     Motions *in Limine*

74.     Plaintiffs' *in limine* motion(s), along with Defendants' oppositions thereto and Plaintiffs' replies, are attached as **Exhibits 15**.

75.     Defendants' *in limine* motion, along with Plaintiffs' opposition thereto and Defendants' reply, are attached as **Exhibits 16**.

### C.     Expected Duration of Trial

76.     These cases are scheduled for a 3-day bench trial beginning on January 7, 2020 at 9:30 a.m., with subsequent trial days beginning at 9:30 a.m.  (*See* D.I. 44, at ¶15; D.I. 296, at ¶1.) Each side will be allocated fifty percent of the time on the record.  The parties propose that each trial day include 7 hours of trial time, for a total of 21 hours of trial time, or 10.5 hours per side, but the parties look to the Court for guidance on this matter.  Time that a side is presenting opening statements, objecting to evidence in open court, examining or cross-examining witnesses, presenting evidence by reading or playing that party's portion of a deposition transcript, or otherwise speaking or arguing on behalf of a party will be counted as the time of that side.

77.    [*Plaintiffs' Proposal*:   In conjunction with drafting this Pre-trial Order, on November 22, 2019, Plaintiffs advised Defendants that the sheer number of prior art references that they included in their draft Pretrial Order sections effectively hid the prior art that Defendants would actually discuss at trial and thus prejudiced Plaintiffs' ability to prepare for trial.  Accordingly, Plaintiffs requested that Defendants identify the references and prior art combinations that they would rely upon at trial.  (*See* PTO Exhibit 15A, Exhibit 1, 11/22/2019 Email from K. Rycroft to J. Pesick.)  On December 19, without reaching any agreement with Plaintiffs, Defendants identified 10 prior art references against the '036, '727, '947, and '526 patents and 12 prior art references against '573 and '628 patents that they intend to rely upon as combination references at trial.    However, Defendants did not provide their proposed combinations of these references, which number in the thousands.  Defendants have also stated that they intend to rely upon any of the dozens of "other references disclosed in their expert reports, by Plaintiffs' experts, throughout expert discovery, or as otherwise disclosed throughout the course of this litigation to show the relevant background, state of the art, and motivation to combine as of the times of the asserted patents."  Defendants refusal to identify the actual combinations of prior art and the references that they will rely upon at trial as motivation to combine prejudices Plaintiffs.  Accordingly, Plaintiffs request that the Court require Defendants to identify by January 3, 2019 at 6:00 p.m. (1) the specific prior art combinations on which Defendants will rely at trial and (2) the secondary references that Defendants will actually ask the Court to consider during trial.]

78.    [*Defendants' Response:* Plaintiffs' proposal should be denied because Defendants have properly disclosed the invalidity case that they intend to present at trial, and further narrowed the number of references as requested by Plaintiffs for the first time during the

parties' meet and confer concerning this document.  As noted in Plaintiffs' proposal, Defendants narrowed the prior art references on which they intend to rely upon to prove the invalidity of the Patents-in-Suit a day earlier than Plaintiffs' requested deadline of the date of submission of this document.  Each of these prior art references was timely disclosed in Defendants' contentions and the reports of Defendants' expert witnesses.  Each of Defendants' experts was presented for deposition, where Plaintiffs had the opportunity to fully examine them on the bases for their opinions regarding which prior art references and combinations thereof demonstrate the invalidity of the patents-in-suit. Then, hours before the pretrial order is to be filed, Plaintiffs have demanded for the first time that Defendants provide specific combinations of prior art, and had also demanded a claim-by-claim analysis (a demand that Plaintiffs have apparently now dropped). Having properly disclosed the invalidity case that they intend to present at trial and without prior objection by Plaintiffs, Defendants should not be required to generate claim charts on the eve of trial because it would prejudicially interfere with Defendants' trial preparation and is further duplicative and unnecessary. Defendants will also disclose the exhibits upon which they will rely at trial in accordance with the negotiated exchange schedule in this order.]

### D.      Type of Trial

79.    This is a non-jury trial.

### E.      Order of Presentation

80.    Consistent with D.I. 279, the order of presentation at trial shall be as follows:

a)  Opening statements will be delivered in the following order:  Defendants, then Plaintiffs.

b)  Defendants shall present their full affirmative case on invalidity of the Patents-in-Suit.

c)  Plaintiffs shall present their rebuttal case on validity of the Patents-in-Suit.

d) [**Defendants' Proposal**:   Defendants shall present their rebuttal to Plaintiffs' validity case, including their evidence on objective indicia of non-obviousness (given that Plaintiffs will only discharge their burden of production, albeit not burden of proof, in their rebuttal case).   Defendants should not have to rebut evidence that has not yet been presented by Plaintiffs.

   **Plaintiffs' Response**: There is no reason that Defendants should be permitted a second bite at the apple in presenting their obviousness case.  Federal Circuit law makes plain that there is no burden shift with respect to evidence on objective indicia of non-obviousness, and Defendants should present the entirety of their obviousness case during their case-in-chief.]

e) Because of scheduling related to another trial, Defendants are available and would prefer to hold closing arguments on January 10, 2019, subject to the Court's availability.   To the extent that the Court requests closing statements, the parties are available on January 10, 2019 or as otherwise directed by the Court.

**F.**    **Protective Order and Corporate Representatives in the Courtroom**

81.    The Court has entered a Stipulated Protective Order (D.I. 84) to safeguard the confidentiality of certain of the parties' business and technical information, as well as that of third parties.   Nonetheless, the presentation of evidence at trial shall take place in open court, unless a party specifically requests, and the Court agrees, that the Court be closed to the public during presentation of certain portions of the evidence.

**G.**    **Post-Trial Briefing**

82.    The parties seek the Court's guidance with respect to a post-trial briefing schedule as well as the length and content of post-trial briefs.

## XII.   <u>ORDER TO CONTROL COURSE OF ACTION (LR 16.3(d)(4))</u>

83.     This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Jeremy A. Tigan*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Peter J. Armenio, P.C.
Robert B. Wilson
Anne S. Toker
Krista M. Rycroft
Sky Adams
Christopher P. Hill
Allyson Parks
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000

Gregory A. Morris
Vikram A. Mathrani
Simeon G. Papacostas
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 701-9300

SHAW KELLER LLP

/s/ *David M. Fry*

_____

John W. Shaw (# 3362)
Karen E. Keller (# 4489)
Andrew E. Russell (# 5382)
David M. Fry (# 5486)
1105 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
dfry@shawkeller.com

*Attorneys for Defendant Teva
Pharmaceuticals USA, Inc.*

OF COUNSEL:

George C. Lombardi
Christopher B. Essig
Ivan M. Poullaos
Jason Z. Pesick
Nathan R. Gilbert
Courtney S. Block
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Noorossadat Torabi
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500

Sharon Lin
WINSTON & STRAWN LLP
1700 K ST NW
Washington, DC 20006
(202) 282-5000

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A

*/s/ David A. Bilson*

_____

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
dab@pgmhlaw.com

*Attorneys for Defendant Sandoz, Inc.*

OF COUNSEL:

William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Jeffery A. Marx
Kevin P. Burke
Lauren M. Lesko
Cynthia H. Sun
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-6304

December 20, 2019